<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JAIR VELEZ,** | |
| Plaintiff, | Civil Action No. 16-307 (ES) |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

<u>**SALAS, DISTRICT JUDGE**</u>

Before the Court is an appeal filed by Jair Velez ("Plaintiff") seeking review of Administrative Law Judge Leonard Olarsch's ("ALJ" or "ALJ Olarsch") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), respectively. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

**I.   BACKGROUND**

On June 6, 2012, Plaintiff filed applications for DIB and SSI, alleging disability beginning June 15, 2011. (D.E. 6-3 at 103). The Commissioner denied both claims on October 5, 2012 and denied Plaintiff's motion for reconsideration on May 3, 2013. (D.E. No. 6-2, Administrative Record ("Tr.") at 20). On May 23, 2013, Plaintiff filed a request for a hearing in front of an ALJ. (*Id.*). Plaintiff's request was granted and ALJ Olarsch held a hearing on June 4, 2014. (*Id.*). The

1

ALJ issued a decision on October 7, 2014, which concluded that Plaintiff was not disabled. (*Id.* at 33). Plaintiff sought review from the Appeals Council and on December 18, 2015, Plaintiff's request to review ALJ Olarsch's decision was denied. (Compl. ¶¶ 10-11).

On January 18, 2016, Plaintiff filed a Complaint appealing the Commissioner's decision. (*Id.* ¶ 12). The Court received the administrative record on March 31, 2016. (Tr. at 1). The parties briefed the issues raised by Plaintiff's appeal. (*See* Pl. Mov. Br.); (D.E. No. 13, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The matter is now ripe for resolution.

## II.   LEGAL STANDARD

### A.   Standard for Awarding Benefits

To be eligible for DIB under Titles II and XVI of the Act, a claimant must establish that he is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry

ends. *Id.* The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1] At step five, the burden shifts to the Commissioner. *Id.*

*Step One.* At step one, the claimant must demonstrate that he is not engaging in any substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). SGA is defined as significant physical or mental activities that are usually done for pay or profit. *Id.* §§ 416.972(a), (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. *Id.* § 404.1520(b). If the claimant demonstrates he is not engaging in substantial gainful activity, the analysis proceeds to the second step.

*Step Two.* At step two, the claimant must demonstrate that his medically determinable impairment or the combination of impairments is "severe." *Id.* § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

*Step Three.* At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits. *Id.* § 416.920(d).

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

When evaluating medical evidence in step three, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] as long as there is no other substantial evidence that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

***Step Four.*** If a claimant is not found to be disabled at step three, the analysis continues to step four, in which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant lacks the RFC to perform any work she has done in the past, the analysis proceeds.

***Step Five.*** In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on her RFC and vocational factors. *Id.* § 404.1520(a)(4)(v).

### B.  Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

**III.     ALJ OLARSCH'S DECISION**

At step one of the analysis, ALJ Olarsch determined that Plaintiff had not engaged in SGA since June 15, 2011. (Tr. at 22). Although Plaintiff had worked after applying for SSI and DIB, he earned only $188.00 and $181.00 in 2011 and 2012, respectively. (*Id.*). ALJ Olarsch found that "[t]hese amounts d[id] not reach the level of [SGA]." (*Id.*).

At step two, the ALJ determined that Plaintiff suffered from major depressive disorder. (*Id.*). The ALJ further found that Plaintiff's major depressive disorder was severe because the condition "ha[d] lasted for more than 12 months or [was] expected to last more than 12 months." (*Id.* at 22-23). In addition, the ALJ found that the major depressive disorder had "more than a minimal impact on the claimant's ability to do work related activities." (*Id*. at 23). However, the ALJ determined that there was insufficient evidence that Plaintiff's Human Immunodeficiency Virus ("HIV") was severe. (*Id.*).

At step three, ALJ Olarsch found that Plaintiff did not have "any physical impairment or combination of impairments that m[et] or medically equal[ed] the criteria of any listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 24). The ALJ concluded that "the severity of claimant's mental impairment d[id] not meet or medically equal the criteria of listing 12.04."[2] (*Id.*). The ALJ determined that Plaintiff had "mild restrictions" in performing daily activities, but could live on his own, shop for groceries, and do his own laundry. (*Id.*). Although Plaintiff had moderate difficulties in social functioning and concentration, Plaintiff did not experience "repeated episodes of decompensation" occurring "at least three times each year." (*Id.* at 25). Therefore, Plaintiff did not satisfy paragraph B because he did not have "two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation." (*Id.*).

---

[2]     Listing 12.04 refers to "depressive, bipolar and related disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

The ALJ also considered whether Plaintiff satisfied the conditions under paragraph C and found that Plaintiff did not show he had "repeated" episodes of decompensation of "extended duration" or that a "minimal increase" in mental demands would lead him to decompensation. (*Id.*). The ALJ found that Plaintiff did not show an "inability to function outside of a highly supportive living arrangement of more than one year," and therefore, did not satisfy paragraph C. (*Id.* at 26).

At step four, the ALJ concluded that Plaintiff's depression "could reasonably be expected" to cause his difficulty in concentrating and recalling information. (*Id.* at 26-27). That said, the ALJ did not find Plaintiff credible regarding the "intensity, persistence and limiting effects of these symptoms." (*Id.* at 27). The ALJ evaluated each of the medical professionals' reports and assessed the credibility of their opinions. (*Id.* at 26-31). The ALJ even disagreed with some of the conclusions, such as Plaintiff's ability to complete "complex tasks" and make "complex decisions." (*Id.* at 29). ALJ Olarsch found inconsistencies between his physical limitations in the adult disability report, the record, and the Plaintiff's testimony. (*Id.* at 30). Plaintiff claimed to not be able to lift more than 20 pounds, but no medical evidence in the record stated these physical limitations. (*Id.*). In fact, Plaintiff testified how he enjoyed walking to the park and using the exercise bars. (*Id.*). The ALJ did not find Plaintiff credible because "his testimony of activities of daily living d[id] not rise to the level of disability." (*Id.*). ALJ Olarsch also considered Plaintiff's receipt of unemployment benefits, even though receiving benefits "does not ipso facto disqualify a person from receiving disability compensation under the Social Security Act." (*Id.* at 31).

The ALJ ultimately concluded that Plaintiff could not perform any of his past relevant work as a bus aide/school monitor and as a paper coater/machine operator. (*Id.* at 31). ALJ Olarsch

took into consideration the vocational expert's testimony that "claimant's past relevant work exceed[ed] the RFC." (*Id.*). Therefore, the ALJ determined that Plaintiff had the residual functioning capacity ("RFC") to perform medium work pursuant to 20 C.F.R. 404.1567(c) and 416.957, "except that the claimant [was] limited to simple, routine and repetitive tasks, involving only simple work-related decisions and few workplace changes." (*Id.* at 26).

At step five, the ALJ concluded that based upon Plaintiff's RFC, age, education, work experience and the vocational expert's testimony, Plaintiff could perform the requirements of a hand packager, kitchen porter/dishwasher, and order picker/warehouse worker. (*Id.* at 32-33). Even though Plaintiff attended a five-day-a-week program, the vocational expert testified that Plaintiff would be able to complete this work in shifts. (*Id.* at 33). The ALJ determined that Plaintiff was not disabled under the Act. (*Id.*).

## IV. DISCUSSION

On appeal, Plaintiff argues that (i) the ALJ's decision should have elaborated on the reasons Plaintiff's major depressive disorder did not meet or equal Listing 12.04; and (ii) the ALJ did not conduct a full RFC assessment. (Pl. Mov. Br. at 27-37). Plaintiff asks the Court to reverse the Commissioner's final decision "without a remand for hearing," find a disability, and award benefits. (*Id.* at 36-37). In the alternative, Plaintiff asks the Court to reverse the Commissioner's decision, remand for a rehearing, and instruct the ALJ to "evaluate the severity of [Plaintiff's] impairments, to develop a residual functioning capacity assessment that accounts for all of [Plaintiff's] functional limitations, and to fully develop the record with regard to [Plaintiff's] ability to perform his past relevant work and to adjust to other work." (*Id.* at 37). For the reasons stated below, the Court rejects Plaintiff's contentions.

### A. The ALJ's Analysis Sufficiently Articulated Why Plaintiff Did Not Meet or Medically Equal Listing 12.04

ALJ Olarsch found that Plaintiff suffers from the severe impairment of major depressive disorder. (Tr. at 22). Nevertheless, the ALJ found that this impairment did not meet or medically equal Listing 12.04, which covers affective disorders. (*Id.*); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff argues that the ALJ should have elaborated on the reasons why Plaintiff's major depressive disorder did not meet or medically equal Listing 12.04. (Pl. Mov. Br. at 27-33).

Listing 12.04 contains three paragraphs: A, B, and C. 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant's impairment meets or medically equals Listing 12.04 if the impairment satisfies the requirements in paragraphs A and B, or the requirements in paragraph C. *Id.* Here, only paragraphs B and C are relevant to the Court's analysis. Paragraph B requires at least two of the following:

> (1) Marked restriction of activities of daily living; or
>
> (2) Marked difficulties in maintaining social functioning; or
>
> (3) Marked difficulties in maintaining concentration, persistence, or pace; or
>
> (4) Repeated episodes of decompensation, each of extended duration.

*Id.* Paragraph C requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following:
>
> (1) Repeated episodes of decompensation, each of extended duration; or
>
> (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

9

>  (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* As an initial matter, Plaintiff concedes that the ALJ addressed paragraph B. (Pl. Mov. Br. at 28) ("Specifically, the ALJ discusses only the "paragraph B" criteria in his listing level assessment but fails to discuss "paragraph C".); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). To be sure, the Court agrees that the ALJ sufficiently addressed paragraph B. In determining whether Plaintiff satisfied paragraph B, the ALJ analyzed each factor in that paragraph, to wit, Plaintiff's (i) daily living, (ii) social functioning, (iii) concentration, persistence, or pace, and (iv) repeated episodes of decompensation (or lack thereof). (*See generally id.* at 24-25). Thus, the ALJ properly concluded that Plaintiff did not satisfy paragraph B. (*Id.*).

The Court next turns to whether the ALJ sufficiently analyzed paragraph C. Although the ALJ concluded that Plaintiff did not meet his burden in establishing he had satisfied paragraph C, Plaintiff argues that the ALJ did not consider paragraph C in the analysis. (Tr. at 26; Pl. Mov. Br. at 28-29). At the outset, the Court notes that the ALJ expressly references paragraph C. (Tr. at 25) ("The undersigned has also considered whether the "paragraph C" criteria are satisfied."). While the Court notes that the ALJ did not specifically articulate each factor under paragraph C, the ALJ had determined in its paragraph B analysis that Plaintiff did not experience "repeated episodes of decompensation," which is the same as factor one under paragraph C. (Tr. at 25); *see Jones*, 364 F.3d at 505 ("*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful

10

review."). Plaintiff has not shown to the Court how the ALJ should have found a determination to the contrary. Plaintiff simply states that he has a "repeated need for daily, full supervision at a mental health facility" and therefore satisfies paragraph C. (Pl. Mov. Br. at 33). To the extent Plaintiff is arguing that the ALJ did not adequately compare Plaintiff's limitations to the listing (*see id.*), such a bare argument—without support or analysis—is not enough. *See Milano v. Comm'r of Soc. Sec.*, 152 F. App'x 166, 169 (3d Cir. 2005) ("Milano has not attempted to show that her impairments meet or equal any specific Listing, and merely concludes that she has 'severe medical conditions' that 'might' do so. That is simply not enough.").

Furthermore, the ALJ did in fact consider the criteria set forth in paragraph C and found that Plaintiff did not show he "suffered from repeated episodes of decompensation, each of extended duration," (Tr. at 25), or demonstrated that a "minimal increase in mental demands or change in the environment would cause him to decompensate." (*Id.* at 26). Indeed, as Defendant points out, "Dr. Perdomo found Plaintiff at least stable on medication" and "Drs. Flaherty and Shapiro both opined as to Plaintiff's capacity to undertake at least a range of simple work." (Def. Op. Br. at 17); (*see also* Tr. at 25). Finally, the ALJ found that the record did not demonstrate that Plaintiff had "an inability to function outside of a highly supportive living arrangement of more than one year" and that Plaintiff's "conditions do not indicate that he would require such an arrangement." (Tr. at 26). For example, the ALJ found that the record shows Plaintiff "is capable of doing many activities of daily living," such as living alone, doing his own laundry, cleaning the bathroom and kitchen, organizing the closet, going outside almost daily, shopping in stores for groceries, and watching television. (*Id.* at 24). The ALJ also noted that Plaintiff seemed not to have any problems with personal care and that he enjoyed "walking, swimming, and bicycling in

11

order to reduce stress and minimize symptoms." (*Id.* at 24-25). Accordingly, the ALJ reasonably and sufficiently concluded that Plaintiff did not meet the requirements of paragraph B or C.

### B. The ALJ Conducted a Full RFC Assessment

Plaintiff argues that the ALJ did not conduct a full RFC assessment. (Pl. Mov. Br. at 33-36). Specifically, Plaintiff argues that the ALJ failed to consider and explain all the pertinent evidence regarding his major depressive disorder. (*Id.* at 35-36). The Court disagrees and finds that the ALJ considered the full record and conducted a proper RFC analysis. (Tr. at 26-31). In particular, the ALJ found Plaintiff not to be credible regarding the "intensity, persistence, and limiting effects of these symptoms." (*Id.* at 27). The ALJ analyzed Plaintiff's treatment notes, setbacks, and Plaintiff's medication use. (*See* Def. Opp. Br. at 18; Tr. at 27-30). Plaintiff argues that the ALJ failed to consider all "pertinent evidence," but has not identified any evidence that the ALJ overlooked or otherwise failed to consider. (Pl. Mov. Br. at 35; Def. Opp. Br. at 18). And "[i]t is not the Court's responsibility to comb the record on behalf of Plaintiff's counsel." *Baker v. The Hartford Life Ins. Co.*, No. 08-6382, 2010 WL 2179150, at *2 n.1 (D.N.J. May 28, 2010).

Plaintiff argues that an individual who is off-task more than 15% of the workday is unemployable, but the ALJ did not find that Plaintiff had these types of limitations. (Def. Mov. Br. at 18-19). Dr. Chu's report indicated that Plaintiff attended an Acute Partial Care program for six weeks in 2012. (Tr. at 27). Following Plaintiff's discharge, however, his medical records indicate that he was "psychiatrically stable" and was "perform[ing] well" in group therapy. (*Id.* at 27-28). The ALJ noted that Dr. Chu did not opine about "the effect of [Plaintiff's] depression on his RFC." (*Id.* at 28). In addition, Dr. Perdomo's opinion noted that Plaintiff had a "well-organized and focused thought process, fair short-term memory, good long-term memory, [and] fair concentration." (*Id.*). Additionally, the ALJ considered Dr. Figurelli's opinion and found that

Dr. Figurelli was not a treating source to Plaintiff, as he "only met with [Plaintiff] once for a consultative examination." (*Id.* at 29). Dr. Figurelli concluded that Plaintiff had limitations regarding social functioning in a work-related setting, which the ALJ considered. (Def. Opp. Br. at 19). The ALJ even disagreed with some of Dr. Figurelli's conclusions, such as Plaintiff's ability to complete "complex tasks" and make "complex decisions" in a work-related setting, as those conclusions were "inconsistent with his other finding that the claimant would have a moderate limitations [sic] in his capacity to sustain an adequate adjustment to the structure and demands of a work-related setting." (Tr. at 29). Therefore, the ALJ accounted for these limitations by limiting Plaintiff to "simple work-related decisions, with few workplace changes, occasional social interactions, and the capacity to be off-task for 10% of the day." (Def. Opp. Br. at 19). The ALJ properly evaluated the record before him.

In addition to the medical evidence, the ALJ also considered Plaintiff's credibility. (Tr. at 30). When determining the RFC of a claimant, the ALJ has a duty to consider all evidence before him, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), but the ALJ is required to include only a claimant's "credibly-established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The ALJ has discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the alleged symptoms. *Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).

The ALJ found that Plaintiff's testimony was inconsistent with his adult functioning reports. (Tr. at 30-31). Plaintiff demonstrated how he could live alone, do laundry, and go grocery shopping. (*Id.* at 30). However, in the adult functioning reports, Plaintiff claimed to have physical

limitations, "such as the ability to lift more than 20 pounds, walk more than a mile without stopping, [and] climb stairs up to two floors." (*Id.*). ALJ Olarsch did not find medical records to support Plaintiff's physical limitations and found his testimony not to be "entirely credible," in addition to Plaintiff receiving unemployment benefits. (Tr. at 30; Def. Opp. Br. at 18). Accordingly, the Court finds that the ALJ sufficiently accredited and discredited the medical opinions, the record, and Plaintiff's testimony in making the RFC determination.

## V.   CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DENIES Plaintiff's appeal. An appropriate Order accompanies this opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**